FRITSCH LOAN & TRUST CO. v. SHERRICK.

No. 5024. Decided October 28, 1932. (15 P. [2d] 323.)

*Clarence Baird,* of Salt Lake City, for appellant.

*S. D. Huffaker,* of Salt Lake City, for respondent.

FOLLAND, J.

This suit was brought to secure cancellation, because of alleged fraud, of a deed and note given by appellant to respondent. Appellant conveyed to respondent a parcel of improved land of the net value of $3,100, exclusive of two mortgages, and gave its note for $900, in exchange for a restaurant business and a four and one-half year lease from Joseph J. Snell Estate on the restaurant premises at 116 Regent street in Salt Lake City, of a claimed value of $4,000. The lease to the premises was obtained from the Snell Estate September 1, 1928, at a rental of $90 per month. The restaurant business was conducted for about six months by respondent, when, on about February 14, 1929, she leased the premises and business to A. Lee Nuttall and W. C. Baxter for a period of two years at a monthly rental of $150 for the first two months, and $175 thereafter. Nutall and Baxter gave a bond in the sum of $300 conditioned on faithful performance of the conditions of the lease agreement signed by themselves as principals and by W. H. Baxter, the father of W. C. Baxter, as surety. A short time after taking possession of the premises, the lessees desired to make certain changes in the counter, to which change respondent consented on condition that an additional $10 per month rent be paid. The parties caused a new lease to be executed, by which the monthly rental was increased to $150 for the first two months and $185 thereafter. This lease was executed by the parties in March, but was dated February 11th, the same date as the original lease between respondent and her lessees.

The husband of respondent, who was authorized to act for her, went to the office of appellant in March, 1929, and said he had a business he wanted to trade for real estate in Salt Lake City. Certain negotiations were then entered

into by Sherrick and appellant's agents, first looking to an exchange of certain farm acreage for the restaurant business, which deal was not consummated. The negotiations finally resulted on May 16, 1929, in respondent transferring to appellant her lease on the Regent street premises and the lease executed by her to Baxter and Nuttall, together with the undertaking for $300 in exchange for the house and lot above referred to, and an installment note of $900 executed by appellant. The exchange was made on the basis of $4,000 value for the lease and restaurant business; $3,100 for the house and lot; and the $900 note to make up the balance.

Appellant alleges that it was induced to make and deliver such deed and note by reason of false representations made by respondent as follows: That the Regent street real estate was good rental property; that the business was prosperous and flourishing; that the property was rented to persons who were financially responsible and in every way reliable and desirable as tenants; that such lessees had paid two month's rent in advance, and had always paid the rent promptly as and when due, and would continue so to do in the future during the period of the lease and longer if permitted to occupy the premises; that they had posted with her as security for the payment of rent a bond in the sum of $300 executed by good and sufficient surety; and that the reasonable rental for such premises was the sum of $185 per month. There were further allegations in aid of an alleged conspiracy to defraud, to the effect that the lessees Baxter and Nuttall represented to appellant that they had a prosperous business at the Regent street restaurant; that they had always paid the rent when due or in advance; that they were financially able to pay the rent accruing in the future, and were willing and anxious to purchase the lease from appellant for the sum of $4,000 payable in monthly installments of $185, with interest at 8 per cent; and that they were ready to sign a contract to purchase the lease for that sum, and were able to pay that sum therefor.

It is alleged these representations were false, and the restaurant property and lease were valueless. After the exchange was made between plaintiff and defendant, Baxter and Nuttall refused to enter into the contract of purchase, whereupon plaintiff paid to Snell one month's rent and tendered back to defendant the leases assigned to it, and elected to cancel and annul the agreement of exchange as made between plaintiff and defendant.

The prayer was for a cancellation of the warranty deed and of the $900 note, and return of the note to plaintiff, and, in case a return thereof could not be had, then for judgment against defendant in the sum of $900.

Defendant denied that such representations were made, and alleged: "That the said exchange was fair in all particulars and that no fraud or misrepresentation was used to procure said exchange." The cause was tried to the court without a jury, and after trial the court made its findings of fact and conclusions of law, and entered judgment in favor of the defendant. From this judgment the plaintiff appeals and assigns as error that the findings are not supported by the evidence, and are contrary to and against law. Instead of finding specifically whether or not the alleged representations had been made, the court made the following finding to cover all the allegations of the fraudulent representation, to wit:

"Negotiations concerning the said exchange were in progress for about six weeks prior to the final consummation, during which time defendant made certain representations concerning the business at the said Regent Street, but the court finds that all of said representations were true at the time they were made; that said representations were to the effect that the said business on Regent Street was a good business and that the said lease was worth the amount defendant was asking for it; concerning the $300.00 bond testified to in this cause the court finds that it was executed and delivered prior to either of the lease agreements put in evidence and as a partial indemnity for the payment of rent on said premises; that the sureties thereon have never repudiated the same, and there is no evidence that demand has ever been made upon the said sureties or that the said sureties would not have paid the said bond if called upon."

It will be noted the court states in its finding of fact that "Certain representations" were made, and that "all of said representations were true at the time they were made." It is then said that such representations were to the effect that the business was a good business, and that the lease was worth the amount the defendant was asking for it. The appellant has not complained of the failure to make specific findings on every issue, and has treated the findings of fact as being against it on every issue raised.

From the findings of fact, so made, the court, in the conclusions of law, concluded that plaintiff was not induced to deliver the deed and note by reason of any false representations or fraud or deceit on the part of defendant or her agent. Since this is an equity case, and we may ourselves make or direct findings, we shall treat the findings of fact as findings that all the allegations made by plaintiff as to the false representations were not proved, that such false representations were not in fact made, and that the representations which were made by defendant were true at the time they were made, and that plaintiff was not induced by any false representations to make the contract of exchange.

The only assignment of error we need consider is the one attacking the finding of fact quoted above. Thus treating the findings as adequately disposing of all the issues raised by the pleadings, we are satisfied there is evidence to support such findings, and that there is no preponderance of evidence in support of plaintiff's allegations as would justify us in making findings of fact contrary to those made by the trial court. The parties had been negotiating for six or seven weeks, and, so far as made to appear, they dealt with each other at arm's length and with equal means of knowledge, except possibly as to the amount of the profits made out of the business by the Sherricks and by Nuttall and Baxter, and there is no evidence that the statements made by these parties as to the profits were untrue. Indeed, the only evidence in the record

on that subject is that such statements were true at the time they were made, although later there was a substantial decrease in the amount of business and the resulting profits. The parties dealt with each other on equal terms free from, and uninfluenced by, any fiduciary or trust relation. The Sherricks had been farmers in Millard county for a number of years, and until a year or two before the making of the contract in dispute, while the Fritsch Loan & Trust Company was a corporation which for many years had been in the business of leasing and selling real estate in Salt Lake City. The agents of appellant had visited the restaurant many times, talked with the lessees Baxter and Nuttall, had counted the number of patrons in the place, and made such observations as they could to fully inform themselves as to the nature and amount of patronage, the value of restaurant business, and the responsibility of Baxter and Nuttall.

The alleged false representation with respect to the $300 surety bond must be treated separately. Taking the findings, aided by the conclusions of law, as including a finding that the representation with respect to this bond was not an inducement to the making of the contract, we think the evidence is sufficient to support such a finding. Negotiations between the parties had been conducted for six or seven weeks prior to May 16th. On the day the deal was consummated by execution and delivery of the note and deed by appellant and the assignment of the lease from Snell to Sherrick and the lease from Sherrick to Baxter and Nuttall, the $300 bond was assigned and delivered with the leases. There had been no mention of the bond in any of the preliminary negotiations between the parties, and the terms and conditions of the contract of exchange were apparently agreed to without any representation by respondent with respect to the existence or validity of the bond. When the papers were being exchanged on the 16th of May, the bond was delivered with the leases by respondent to appellant. At that time, according to the testimony of Mr. Penner, appellant's manager, "The Sher-

ricks stated" it was an additional surety to guarantee performance of the lease, that it was a "good marketable bond, good security, and it showed that these men meant to do the right thing." Penner was asked if he relied upon these representations, and he answered, "yes," but it is not shown that he knew anything about the bond prior to that time, or that any representations of the existence or the validity of the bond had been made to influence or induce the making of the contract of exchange. So far as the record discloses, the terms of the contract were all agreed to before appellant's officers were informed of the existence of the bond. There had been a meeting of the minds of the parties as to the details of the exchange.

The papers were drawn and ready for execution and delivery when the fact of the bond's existence was disclosed.

We need not pass on the question whether the bond was valid or not. No demand was made on the surety for the payment of his obligation. There has been no refusal to pay or repudiation of the bond by the surety. It may be that the surety would have a good defense to any claim on the bond if he chose to assert it. The surety was not called as a witness, and we do not know whether he knew or consented to the change in the lease, except that his son, W. C. Baxter, testified that he did not inform his father of such substitution.

Appellant sought to rescind, and gave notice to that effect to the respondent when it discovered that the lessees Baxter and Nuttall refused to sign a contract of purchase from it of the leases assigned to it by respondent, notwithstanding they had previously orally agreed to make and execute such a contract of purchase. The reason these parties failed to enter into the contract of purchase was that the business had steadily declined during the month of May and up to June 11th, when they left the place. It was testified, without contradiction, that a large number of laborers who had been engaged in laying natural gas mains in this vicinity and who had been patrons of the restaurant had been trans-

ferred from this city to lay mains elsewhere, and Salt Lake county abandoned the practice of giving orders to indigent persons for meals on the Baxter and Nuttall restaurant. The restaurant served cheap meals, and catered to the class of persons described. When the conditions changed, there was a sharp decline in the volume of business. Undoubtedly had the business increased and become more valuable instead of declining Baxter and Nuttall would have signed the contract of purchase and appellant would not have attempted to rescind its contract, but would have been content with its bargain.

The judgment of the district court of Salt Lake county is affirmed, with costs to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.